UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON REDWINE,

                Plaintiff,

    v.

ANDREW SAUL
COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.

_____/

Case No. 20-11224

Stephanie D. Davis
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)

Plaintiff Shannon Redwine ("Plaintiff") brings this action pursuant to 42

U.S.C. § 405(g), challenging the final decision of Defendant Andrew Saul,

Commissioner of Social Security ("Commissioner") denying her application for

disability insurance benefits ("DIB") under the Social Security Act (the "Act").

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 13), the

Commissioner's cross-motion for summary judgment (ECF No. 15) and the

administrative record (ECF No. 10).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's

motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's decision.

## I.     DISCUSSION

### A.     Background and Administrative History

Initially, Plaintiff alleged her disability began on February 25, 2014; she later amended this date, during her hearing, to November 6, 2016.  (ECF No. 10, PageID.82-83).  She was 50 years old on the alleged onset date and 52 years old on the date last insured.  (*Id.* at PageID.71).  She filed an application for Disability Insurance Benefits ("DIB") on September 27, 2017.  (*Id.* at PageID.177).  In her disability report, she identified the following alleged impairments as the conditions which limited her ability to work: blind or low vision, spinal stenosis, low/mid/upper back injury, neck injury, hands/wrists/fingers/shoulders injury, major depressive disorder, generalized anxiety disorder with agoraphobia, panic disorder, sleep disorder/insomnia, and obesity/high blood pressure/high cholesterol/pre-diabetes.  (*Id.* at PageID.317).

Plaintiff's application was initially denied on December 26, 2017.  (*Id.* at PageID.221).  On May 7, 2018, she requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at PageID.233).  On December 4, 2018, ALJ Roy LaRoche ("ALJ LaRoche") held a hearing, at which Plaintiff and Diane Regan, the vocational expert ("VE") in the matter, testified.  (*Id.* at PageID.78-124).  On

February 15, 2019, ALJ LaRoche issued an opinion, which determined Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the last date insured.  (*Id.* at PageID.54-73).

Plaintiff submitted a request for review of the hearing decision to the Appeals Council on April 4, 2019.  (*Id.* at PageID.265-66).  However, on March 23, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.43).  Thus, ALJ LaRoche's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on May 18, 2020.  (ECF No. 1).

### B.    Plaintiff's Medical History

During a January 6, 2016 follow-up visit, Plaintiff reported experiencing pain at a level of 3/10 and explained her neck pain was much worse than her back pain.  (ECF No. 10, PageID.500).  She described the pain as stabbing and aching. (*Id.*).  She reported "numbness, burning and pins and needles down [her] bilateral upper extremities to [her] fingers, especially the 4th and 5th digits." (*Id.*).  In regard to her lower back, while Plaintiff considered it less severe than her neck, the record indicates she rated her pain as 5/10 and described it as sharp and shooting. (*Id.*).

On March 21, 2016, Plaintiff complained of neck pain and gauged the level at 3/10 on the pain scale.  (*Id.* at PageID.495).  She complained that her neck pain

was much worse than her back pain.  (*Id.*).  She also complained of "numbness, burning and pins and needles down the bilateral upper extremities to the fingers, especially the 4th and 5th digits."  (*Id.*).  She rated her low back pain at a 3/10 on the pain scale and expressed she experienced an increase in pain while driving. (*Id.*).  She described her pain as sharp and shooting and experienced "occasional radiation down the bilateral lower extremities to the back of the knee."  (*Id.*). During the visit, it was observed that Plaintiff's range of motion of the cervical, thoracic, and lumbar spine were decreased in all planes.  (*Id.* at PageID.496). There was also a notation in the record regarding a decreased sensation to the right C5, left C6, C7, and C8, left L5, and S1 dermatomes.  (*Id.*).  A review of Plaintiff's September 3, 2013 MRI from Mid Valley Imaging was also undertaken and indicated the following diagnoses:

- Lumbar spine multilevel disc herniations with stenosis;

- Cervical spine multilevel disc herniations with moderate to severe stenosis;

- Cervical radiculopathy;

- Lumbar radiculopathy;

- Bilateral shoulder bursitis and impingement;

- Bilateral carpal tunnel syndrome;

- Left De Quervain's tenosynovitis;

- Bilateral cubital tunnel symptoms; and

- Myelopathy.

(*Id.* at PageID.489-90).

On August 9, 2016, Plaintiff was examined at The Spine and Orthopedic Center.  (*Id.* at PageID.487).  During the examination, she complained of a "stabbing and aching pain with cramping" in her neck; she stated the issue was worsening and this was her greatest concern.  (*Id.* at PageID.488).  She also reported a limited range of motion in regard to her shoulders.  (*Id.*).  In relation to Plaintiff's spine, the medical notes indicate "[m]oderate tenderness to palpation to the cervical, thoracic, and lumbar paraspinals, positive for spasm."  (*Id.* at PageID.489).  Further, the record notes "[r]ange of motion of the cervical, thoracic, and lumbar spine is decreased in all planes.  Pain with ROM all planes."  (*Id.*).  She also had a decreased sensation to the right C5, left C6, C7 and C8, left L5, and S1 dermatomes.  (*Id.* at PageID.489).  She had a positive Hoffmann's[1] test bilaterally, a positive straight leg raise on the right at 45 degrees with pain to the calf, and the Clonus[2] was 3 bilaterally.  (*Id.* at PageID.489).

---

[1] Hoffman's sign or reflex is a test that doctors use to examine the reflexes of the upper extremities.  It is used to test for the possible existence of spinal cord compression from a lesion on the spinal cord or another underlying nerve condition.  Medical News Today, *What Does a Positive or Negative Hoffman Sign Mean?* (June 12, 2018), https://www.medicalnewstoday.com/articles/322106#takeaway.

[2] Clonus is a type of neurological condition that creates involuntary muscle contractions. Healthline, *Everything You Should Know About Clonus* (June 2, 2017), https://www.healthline.com/health/clonus#outlook.

On April 6, 2017, Plaintiff underwent an X-ray of her right hip at Kern Radiology Medical Group.  (*Id.* at PageID.429).  The test indicated "[n]o significant arthropathy or osseous abnormality of the right hip" but noted "[d]egenerative changes of the lower lumbar spine."  (*Id.*).  A mildly reduced range of motion was also noted for Plaintiff's lumbar spine.  (*Id.* at PageID.424). However, Plaintiff's gait and thoracic spine were noted as being normal.  (*Id.*). Also, no abnormalities were observed or identified involving her neck.  (*Id.*).  On May 3, 2017, Plaintiff underwent an MRI of her right hip which showed "[n]o significant hip osteoarthritis" but noted "[d]egenerative disc disease at L3-4 through L5-S1."  (*Id.* at PageID.431).

Plaintiff was seen on May 16, 2017, at GMA Healthcare Providers by Dr. Alaleh Bazmi.  (*Id.* at PageID.416).  The medical notes indicate her "hip joint [was] normal" and the X-ray results of her hip showed no abnormality.  (*Id.*)  A review of a previous MRI indicated normal results, but showed lumbar disc disease.  (*Id.*).

On September 4, 2018, Plaintiff underwent another MRI at McLaren (Port Huron).  (*Id.* at PageID.820).  The medical notes indicate the following impressions:

*Cervical Spine*

- Moderate multilevel degenerative disc disease.  Along with facet and uncovertebral joint arthropathy, there is a grade 1 retrolisthesis at C6-C7.

- Large posterior disc osteophyte complex at C6-C7 causes moderate spinal canal stenosis (5.9 mm AP canal dimension) with mild impingement of the cord at this level.

- Patchy artifact projects over the cord.  No convincing T2 weighted cord signal abnormality especially when correlating with the axial series.

- Additional levels of mild spinal canal stenosis at C3-C4, C4-C5, C5-C6 and variable mild to moderate neuroforaminal stenoses as outlined above.

*Lumbar Spine*

- Degenerative disc disease mid to lower lumbar spine as well as hypertrophic facet arthropathy.  Changes are greatest at L4-L5 where there is an associated grade 1 retrolisthesis and mix Modic type I and type II endplate change.

- Here at L4-L5, there is moderate to severe spinal canal stenosis with closely clustered cauda equina nerve roots and moderate right neuroforaminal stenosis.

- At L3-L4, there is moderate narrowing of the spinal canal with abutment of the traversing left L4 nerve root.

- At L5-S1, disc material closely approaches and may contact the traversing left S1 nerve root.  Moderate left neural foraminal stenosis.

(*Id.* at PageID.822-23).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(b), at **Step 1** of the sequential evaluation process, ALJ LaRoche found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of November 6, 2016, through her date last insured of December 31, 2018.  (*Id.* at PageID.60).  At **Step 2**, ALJ LaRoche found that Plaintiff had the following severe impairments through the date last insured: degenerative disc disease of the cervical, thoracic, and lumbar spine, degenerative joint disease of the shoulders, allergic rhinitis, obesity, and depression.  (*Id.*).  ALJ LaRoche also noted there was objective evidence in the medical record of the following nonsevere impairments: hypertension, residuals from a left foot ankle ligament injury, sleep disorder, insomnia, and high cholesterol.  (*Id.*).  Lastly, ALJ LaRoche noted there was a reference in the record to pre-diabetes but due to the lack of objective evidence in the record the impairment did not qualify as a medically determinable impairment.  (*Id.*).  At **Step 3**, ALJ LaRoche found Plaintiff did not have an impairment or combination of impairments that met or

medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart

P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (*Id.* at

PageID.60-61).  Between **Steps 3 and 4** of the sequential process, ALJ LaRoche

evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that she

had the RFC:

> to perform light work as defined in 20 C.F.R.
> 404.1567(b) except she can occasionally push and pull
> with the bilateral upper extremities and bilateral lower
> extremities.  She can occasionally perform postural
> activities except she can never climb ladders, ropes, or
> scaffolds.  She can frequently reach, handle, and finger
> with the bilateral upper extremities.  She can have
> occasional exposure to atmospheric conditions,
> unprotected heights, and dangerous moving machinery.
> She requires the ability to alternate between sitting and
> standing at workstation, provided that she is not off-task
> greater than fifteen percent of the workday.  She is
> limited to performing simple, routine tasks.

(*Id.* at PageID.64-65).  At **Step 4**, ALJ LaRoche determined that claimant was

unable to perform any past relevant work.  (*Id.* at PageID.70).  Plaintiff has a high

school education and is able to communicate in English.  (*Id.* at PageID.71).  At

**Step 5**, considering Plaintiff's age, education, work experience, and RFC, ALJ

LaRoche determined there were jobs that existed in significant numbers in the

national economy which Plaintiff could perform.  (*Id.*).  ALJ LaRoche therefore

---

[3] The claimant's RFC is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the

Social Security Act through December 31, 2018, the date last insured.  (*Id.* at

PageID.72).

### D.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[4]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that, "notwithstanding the claimant's

impairment, he retains the residual functional capacity to perform specific jobs

---

[4] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

existing in the national economy." *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### E.    STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

G.   **Analysis and Conclusion**

Plaintiff argues her case should be remanded as ALJ LaRoche's decision contains errors of law and is not supported by substantial evidence. (ECF No. 13, PageID.861). Specifically, Plaintiff argues ALJ LaRoche's (1) Step 3 determination is faulty and not supported by substantial evidence and (2) conclusion at Step 5 that work exists in the national economy, which Plaintiff may perform, was erroneous as ALJ LaRoche's RFC assessment was not accurate. (*Id.* at PageID.868). The Commissioner counters that the Court should (1) reject Plaintiff's arguments of error at Step 3 because the record does not show evidence of reduced strength with sensory or reflex loss for twelve consecutive months and (2) uphold the RFC finding because ALJ LaRoche reasonably relied on opinion evidence and prior administrative medical findings, and Plaintiff has not shown that she required greater functional limitations. (ECF No. 15, PageID.884-85).

1.  <u>ALJ LaRoche's Step Three Finding is Supported by Substantial Evidence</u>

At Step 3, ALJ LaRoche found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (ECF No. 10, PageID.60-61).  Based on his review of the record, ALJ LaRoche concluded it "failed to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (1.04A)."  (*Id.* at PageID.62).  Plaintiff argues this finding is unsupported by substantial evidence.  (ECF No. 13, PageID.869).

The burden of proof for establishing that an impairment meets or equals the requirement of a listed impairment rest with the claimant."  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161,

164 (6th Cir. 1987)).  "An impairment that manifests only some of those criteria,

no matter how severely, does not qualify."  *Sullivan*, 493 U.S. at 530.  An

impairment or combination of impairments is considered medically equivalent to a

listed impairment "if the symptoms, signs and laboratory findings as shown in

medical evidence are at least equal in severity and duration to the listed

impairments."  *See Land v. Sec'y of Health & Humans Servs.*, 814 F.2d 241, 245

(6th Cir. 1986) (per curiam); 20 C.F.R. §§ 404.1526(b), 416.926(b).

Listing 1.04(A) states the following:

> *Disorder of the spine* (e.g., herniated nucleus pulposus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral
> fracture), resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord.

With:

> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion
> of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory
> or reflex loss and, if there is involvement of the lower
> back, positive straight-leg raising test (sitting and
> supine)[.]

20 C.F.R. Pt. 404, App. 1, Listing 1.04.[5]

---

[5] ALJ LaRoche also considered whether Plaintiff's impairment satisfied subparagraphs 1.04(B) or 1.04(C) and concluded the record failed to establish the necessary requirements and thus Plaintiff's impairments failed to meet the listing under those respective subparagraphs. (ECF No. 10, PageID.61-62).  Plaintiff does not challenge this finding and thus the undersigned will not address this matter.

Plaintiff argues her spinal impairments meet or are medically equal to the requirements of Listing 1.04(A).  (ECF No. 13, PageID.871).  She contends that she "*could* reasonably meet or equal" 1.04(A) and evidence to support such a finding is scattered throughout the medical record.  (*Id.* at PageID.872-73) (emphasis in original).  In support of her argument, she explains she suffers from nerve root compression in the neck and also the lower back which is not common.  (*Id.* at PageID.872).  She also points to the additional conditions, outlined as follows, to support her argument: (i) prominent indentation of the cord at C6-C7 (ECF No. 10, PageID.821); (ii) restricted range of motion in the cervical and/or lumbar spine (*id.* at PageID.424, 489, 567, 711, 715, 739); (iii) sensory deficits in the upper and/or lower extremities (*id.* at PageID.489, 789); (iv) lower extremity muscle weakness (*id.* at PageID.489); (v) hyper-reflexia in the upper and/or lower extremities (*id.*); and (vi) positive straight leg raise (*id.*).  (*Id.* at PageID.871, 872, 873).

Based on the undersigned's review of the medical evidence, ALJ LaRoche's decision at Step Three of the analysis is supported by substantial evidence.  While based on the medical record, Plaintiff does have a degenerative disc disease, thus satisfying the first portion of Listing 1.04(A), the record does not support the presence of nerve root compression with (i) motor loss accompanied by sensory or reflex loss and (ii) positive straight-leg raising test (sitting **and** supine). 20 C.F.R.

Pt. 404, App. 1, Listing 1.04(A) (emphasis added).

The evidence Plaintiff proffers to support her argument that her condition "*could* reasonably meet or equal" Listing1.04(A) falls short of what is necessary to satisfy the requirement. (*Id.* at PageID.872-73). First, the record does not support a finding of motor loss/muscle weakness. Plaintiff cites to one record from August 2016, when her bilateral EHL was recorded as 4+/5. (ECF No. 13, PageID.872; ECF No. 10, PageID489). However, the record shows that there were several subsequent instances where she experienced no motor loss as follows:

- December 2017 – "Motor Strength – 5/5 in the upper and lower extremities bilaterally. Normal muscle bulk and tone. Handgrip strength was fair bilaterally." (ECF No. 10, PageID.568);

- June 2018 – "[N]ormal tone and motor strength." (*Id.*at PageID.715);

- August 2018 – "Motor Strength and Tone: normal tone. Joints, Bones, and Muscles: normal movement of all extremities." (*Id.* at PageID.729); and

- October 2018 – "Grade 5/5 in all key ASIA upper and lower extremity muscle groups bilaterally." (*Id.* at PageID.845).

As outlined above, there are several medical records spanning across a 10-month period where no complaints or observations regarding motor loss were noted. As such, Plaintiff has failed to meet her burden to proffer medical evidence to support

17

the presence of motor loss.

Further, while Plaintiff's records reveal instances of sensory loss on August 9, 2016 (*id.* at PageID.489) and September 20, 2018 (*id.* at PageID.787), there are medical records which do not contain any complaints or notes of sensory loss. The existence of two records, dated approximately two years apart, is not sufficient to support a conclusion that ALJ LaRoche's finding the record lacked evidence to support sensory loss was not supported by substantial evidence. Especially in light of the fact that at various points between August 2016 and September 2018 Plaintiff was observed as having intact sensation (e.g., in December 2017, Plaintiff was observed as having normal deep tendon reflexes, able to walk without difficulties including on her toes and heels and alternating hand movements and finger to nose were normal (*id.* at PageID.568); and in June and July 2018, Plaintiff was observed as having sensation which was "grossly intact" (*id.* at PageID.711, 715)). These records conflict with Plaintiff's contention that she experienced sensory loss. As there is substantial evidence in the record to support ALJ LaRoche's finding that Plaintiff failed to proffer evidence to support her contention that she suffered motor loss accompanied by sensory or reflex loss, the Court is obligated to defer to that finding even if there is evidence in the record that would support an opposite conclusion. *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273).

Finally, Plaintiff's medical record in regard to the positive straight leg raising test is not sufficient to meet the requirements of Listing 1.04(A) as it does not contain information for both sitting and supine tests.  Plaintiff points to the results of a straight leg raising test conducted in August 2016 which states "positive on right at 45 degrees with pain to the calf."  (*Id.* at PageID.489). However, the results provide no further detail and most importantly do not specify whether the results relate to a sitting test, supine test, or both.  As Listing 1.04(A) explicitly identifies both tests as necessary to satisfy the requirement and Plaintiff's medical record demonstrates that at least one test is missing, Plaintiff has not met her burden to satisfy this prong of the Listing.  Further, the record contains evidence of subsequent straight leg raising test results that were negative in December 2017 (*id.* at PageID.567) and October 2018 (*id.* at PageID.845).

Plaintiff mentions in passing that her impairments could medically equal the requirements of Listing 1.04(A) but fails to include a thorough explanation as to how the symptoms she experiences are equivalent to those identified in Listing 1.04(a) and therefore does not warrant an analysis by the Court.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting

*Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)).

Based on the above, the undersigned finds Plaintiff failed to carry her burden of proof for establishing that her impairment meets the requirement of Listing 1.04(A). *Sullivan*, 493 U.S. at 530. ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Thus, the undersigned finds that the record contains substantial evidence to support ALJ LaRoche's finding that Plaintiff's condition does not satisfy Listing 1.04(A).

### 2. ALJ LaRoche's RFC is Supported by Substantial Evidence

ALJ LaRoche crafted an RFC that aligned with the objective evidence included in Plaintiff's record. ALJ LaRoche found Plaintiff could:

> perform light work as defined in 20 C.F.R. 404.1567(b) except she can occasionally push and pull with the bilateral upper extremities and bilateral lower extremities. She can occasionally perform postural activities except she can never climb ladders, ropes, or scaffolds. She can frequently reach, handle, and finger with the bilateral upper extremities. She can have occasional exposure to atmospheric conditions, unprotected heights, and dangerous moving machinery. She requires the ability to alternate between sitting and standing at workstation, provided that she is not off-task greater than fifteen percent of the workday. She is limited to performing simple, routine tasks.

(*Id.* at PageID.64-65).

Plaintiff argues the RFC assessment is not accurate as ALJ LaRoche

"neglected to include limitations to the cervical spine" and substantial evidence does not support his determination that Plaintiff "could handle and finger objects frequently, that she could perform light work activity, and that she would not be off task more than 15% of the workday." (ECF No. 13, PageID.875). Further, Plaintiff contends ALJ LaRoche did not pose any hypotheticals to the VE involving the requirements for neck positions for any jobs at the light level. (*Id.* at PageID.876).

Plaintiff contends there is objective evidence in the record that she has loss of sensation in her upper extremities and tremors in her hands that cause difficulty with fine manipulation. (ECF No. 13, PageID.877). This argument does not undermine ALJ LaRoche's RFC finding concerning Plaintiff's upper extremities as there are a number of records which show there is substantial evidence that at multiple instances Plaintiff experienced little to no issues with her upper extremities (e.g., December 2017, Plaintiff was noted as able to "extend the hand," "oppose the thumb to each finger," and "make a fist without difficulty" (ECF No. 10, PageID.567); September 2018 EMG of the upper extremities showed normal results (*id.* at PageID.845); and an October 2018 medical record noted "[g]rade 5/5 in all key ASIA upper extremity muscle groups bilaterally" and "normal sensation to light tough in upper extremity dermatomes"(*id.* at PageID.845)). While there is evidence that provides Plaintiff periodically complained of experiencing tremors

and loss of sensation in her upper extremities there is evidence in the record to also support ALJ LaRoche's finding regarding Plaintiff's upper extremities and the related limitations included in the RFC. Thus, in this instance it is appropriate for the Court to defer to the ALJ's finding although there is evidence in the record that could support an opposition conclusion. *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273 (6th Cir. 1997)) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

Further, Plaintiff testified during her hearing that at home she occasionally does paperwork (ECF No. 10, PageID.109), will periodically cook for herself (*id.* at PageID.110), does some housework (*id.*), and does the grocery shopping (*id.*). Thus, Plaintiff's testimony further underscores ALJ LaRoche's finding that she can "frequently reach, handle, and finger with the bilateral upper extremities" is supported by substantial evidence. (*Id.* at PageID.64).

Plaintiff also contends ALJ LaRoche's opinion that she could perform light work is not supported by substantial evidence as she is only able to stand for 5 to 10 minutes, cannot repetitively lift over 5 pounds, and repeatedly told her doctors that her pain intensifies when she is on her feet and keeps her from working. (ECF No. 13, PageID.877). These claims are based on Plaintiff's subjective statements and reports to her doctors (ECF No. 10, PageID.288, 291, 370) and not supported

by objective medical evidence.  Further, Plaintiff testified during her hearing that she was able to stand for approximately  15 minutes (*id.* at PageID.113), do some housework (*id.* at PageID.109), and go grocery shopping (*id.*).  Despite the fact that only subjective medical evidence was proffered by Plaintiff to support this contention and her slightly inconsistent testimony, ALJ LaRoche included a sit/stand option in her RFC which permits Plaintiff "the ability to alternate between sitting and standing at workstation, provided that she is not off-task greater than fifteen percent of the workday."  *Id.* at PageID.64-65.  As a result,  ALJ LaRoche's RFC addresses Plaintiff's concern regarding her alleged inability to stand for longer than 10 minutes.

Plaintiff also argues that ALJ LaRoche inappropriately relies heavily on the opinions of the State agency medical examiner and the consultative examiner to support his RFC but failed to account for the "fact that both of these doctors gave their medical opinions before much of the pertinent medical evidence was even available, especially the significant findings in the MRI from September 2018." (ECF NO.13, PageID.878).  Plaintiff does not challenge or question the substance of the findings of Drs. Afra, Frye and Dipsia's but instead challenges ALJ LaRoche's reliance on their respective findings based on the fact that the examinations were conducted before certain medical evidence was available.  The undersigned does not find this argument persuasive as Plaintiff does not challenge

the substantive findings in the respective doctor's reports which is notable.  More

importantly, the medical evidence created after the issuance of Drs. Afra's opinion

and Drs. Frye and Dipsia's findings did not undermine or invalidate their

respective findings.  Furthermore, ALJ LaRoche's decision demonstrates that he

did not solely rely upon Drs. Afra's opinion and Drs. Frye and Dipsia's findings.

The discussion included in the decision demonstrates that ALJ LaRoche analyzed

the post-2017 medical records himself and took them into consideration when

crafting Plaintiff's RFC.  (ECF No. 10, PageID.66-69).  Thus, Plaintiff's concern

regarding the fact that ALJ LaRoche relied heavily upon Drs. Afra's opinion and

Drs. Frye and Dipsia's findings is eradicated by the fact that ALJ LaRoche

reviewed and discussed, in his decision, the post-2017 medical records including

the September 2018 MRI.

Plaintiff also argues that ALJ LaRoche neglected to include limitations in

the RFC to address Plaintiff's cervical spine issues.  To support her argument,

Plaintiff points to a number of subjective statements included in the record where

she mentions difficulty completing daily tasks due to neck pain.  (ECF No. 13 at

PageID.876 (citing ECF No. 10 at PageID.287, 292, 370, 488, 736)).  However,

she fails to identify any objective medical evidence to support this contention.

(ECF No. 13, PageID.876).  Furthermore, Plaintiff's testimony regarding her

conservative treatment plan, lack of invasive procedures to date, and her activities

such as cooking for herself, paperwork, and grocery shopping undermine her argument that a limitation for her cervical spine issues in the RFC was necessary. (*See* ECF No. 10, PageID.68,101, 109-10); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis.").  Thus, due to the lack of objective evidence and the inconsistency between Plaintiff's testimony, the undersigned finds that ALJ LaRoche's decision not to account for a limitation in Plaintiff's ability to hold her head in a static position, turn side to side or look up or down in the RFC as supported by substantial evidence.

Further, Plaintiff argues ALJ LaRoche failed to pose any questions to the VE about the requirements for neck positions for any jobs at the light level.  The limitations included in the hypothetical presented to the VE are the same limitations listed in the RFC outlined in the ALJ's decision.  *See* ECF No. 10, PageID.64-65, 119).  Hence, Plaintiff's challenge to the hypothetical is actually a "veiled attack" on the RFC.  *See Kitchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) (plaintiff's step five argument is a "veiled attack" on the RFC when the hypothetical is identical to the RFC assessment); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the

Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner."). The undersigned finds this argument unpersuasive as, discussed above, Plaintiff did not proffer any objective medical evidence to support the severity of her neck pain.

The ALJ's decision at Step Five that a sufficient number of jobs exist in the national economy which Plaintiff could perform with her RFC is also supported by substantial evidence. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.") (citing *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)). Where, as here, the ALJ's hypothetical question included the limitations the ALJ reasonably found credible, the ALJ could properly rely on the VE's testimony as substantial evidence that Plaintiff is able to perform jobs that exist in significant numbers in the national economy. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

Finally, Plaintiff argues ALJ LaRoche's assessment includes a limitation that allows Plaintiff to be off task up to 15% of the workday while exercising a sit-stand option yet fails to account for any additional time off task which may be related to Plaintiff's other conditions (i.e., severe pain, headaches, tremors, depression, side-effects from medications, anxiety and difficulty concentrating). (ECF No. 13, PageID.878). Plaintiff makes this in a passing manner without any further support or explanation as to how her other conditions would cause her to be off task for more than 15% of the workday. Plaintiff does not provide any examples or identify any medical evidence in the record to support the contention she needs to be off task more than 15% of the workday. As this issue was mentioned in a passing manner, the undersigned will not undertake a discussion of this matter as the aforementioned statement amounts to nothing more than a hypothetical and not an actual argument. *See McPherson*, 125 F.3d at 995-96 (quoting *Citizens Awareness Network, Inc.*, 59 F.3d at 293-94 (citation omitted)).

### F.   Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). She has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.


Date: July 14, 2021                    s/Curtis Ivy, Jr.
                                        Curtis Ivy, Jr.
                                        United States Magistrate Judge